IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| AMY DECOURSEY | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 19-02198-DDC-GEB |
| | ) |
| THE SHERWIN-WILLIAMS COMPANY | ) |
| | ) |
| Defendant/Third-Party Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| A&L FLOORING, LLC and | ) |
| AARON GAONA VARGAS, | ) |
| | ) |
| Third-Party Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's Motion for Leave to Amend Pleadings (ECF No. 46) and Memorandum in Support (ECF No. 47). After careful consideration of Plaintiff's Motion and Memorandum, Defendant The Sherwin-Williams Company's Memorandum in Opposition (ECF No. 49), Plaintiff's Reply (ECF No. 58), and all attached exhibits, the Court **GRANTS** Plaintiff's request to amend her Complaint.[1]

**I.     Background**

Plaintiff brings this case against Defendant The Sherwin-Williams Company, her

---

[1] Because this case was originally filed in Missouri state court, the document Plaintiff is asking to amend to is titled Petition for Damages. *See* ECF No. 1-1, pp. 2-22. For ease of consistency with Federal terminology, the Court will refer to it as her Complaint.

1

previous employer of ten years.[2] Plaintiff alleges discrimination, harassment, retaliation, and hostile work environment based upon the Missouri Human Rights Act ("MHRA"),[3] Title VII,[4] and the Americans with Disabilities Act[5] ("ADA").[6] Plaintiff claims she was sexually harassed and assaulted during the course of her employment.[7] Plaintiff states when she told her supervisors about these incidents and participated in an investigation regarding the same, she was terminated.[8]

Through the present Motion, filed December 6, 2019, Plaintiff seeks leave to amend her Complaint to add claims under the Stored Communication Acts ("SCA")[9] and the common law tort of intrusion upon seclusion.[10] The court-imposed deadline to move to amend the pleadings, however, passed on October 18, 2019.[11] Defendant therefore opposes Plaintiff's Motion on timeliness grounds.[12] Defendant also insists Plaintiff's proposed new claims are futile and argues against amendment on those grounds as well.[13] The Court, after a discussion of Plaintiff's proposed amendment and legal standards regarding the same, will address each of Defendant's arguments.

---

[2] *See* ECF No. 1-1.
[3] Mo. Rev. Stat. § 213.010 et seq.
[4] 42 U.S.C. § 2000e et seq.
[5] 42 U.S.C. § 12111 et seq.
[6] *See* ECF No. 1-1
[7] *Id.*
[8] *Id.*
[9] 18 U.S.C. § 2701 et seq.
[10] *See* ECF No. 46.
[11] *See* ECF Nos. 30, 31, 33, and 34.
[12] *See* ECF No. 49.
[13] *Id.*

## II. Plaintiff's Motion for Leave to Amend Pleadings (ECF No. 46)

### A. Plaintiff's Proposed Amendment

Plaintiff's Motion for Leave to Amend Pleadings ("Motion") seeks to add claims under the SCA and common law tort of intrusion upon seclusion. In support of her Motion, Plaintiff attaches a proposed First Amended Complaint for Damages ("Proposed First Amended Complaint").[14] A summary of the facts alleged in the Proposed Amended Complaint is helpful to the Court's analysis and is recounted below.

Plaintiff alleges Defendant provided her with a smartphone for use in her job. Plaintiff states part of her job duties involved using Facebook. Thus, Plaintiff downloaded the Facebook application on her work smartphone and would log into her personal Facebook account as necessary for her job.[15]

Upon Plaintiff's termination, she returned her work smartphone to Defendant. Plaintiff alleges after her termination, Defendant used Plaintiff's work smartphone to access her private Facebook account and certain private electronic communications she made using the account. In doing so, Plaintiff alleges Defendant accessed without authorization the Facebook server on which such communications were stored. Plaintiff states the private electronic communications accessed were not related to Plaintiff's work for Defendant and were not sent to or from any person connected to Plaintiff's work for

---

[14] The proposed First Amended Complaint for Damages can be found at ECF No. 46-1.
[15] *See* ECF No. 46-1, ¶¶ 78-80.

Defendant. Some of the private, electronic communications accessed by Defendant contain sensitive photographs of Plaintiff.[16]

Plaintiff further alleges Defendant had no reasonable basis to access her private Facebook communications and that such actions were intentional. Additionally, Plaintiff states she never authorized Defendant to access the private Facebook communications, and such intrusion into her personal affairs was highly offensive.[17]

### B. Discussion

#### 1. Timeliness of Plaintiff's Motion

##### a. Legal Standard

When a proposed amendment is offered after the deadline to amend pleadings has passed, Fed. R. Civ. P. 16(b)(4) is implicated. It provides a "schedule may be modified only for good cause and with the judge's consent." When considering a motion to amend the pleadings filed past the scheduling order deadline, "judges in this District have consistently applied a two-step analysis based on both Rule 16(b) and Rule 15(a)."[18] In such cases, the court "first determines whether the moving party has established good cause within the meaning of Rule 16(b)(4) so as to justify allowing the untimely motion."[19] Only after finding good cause will the court proceed to the second step and evaluate whether the broader Rule 15(a) standard for amendment has been satisfied.[20]

---

[16] *See id.* at ¶¶ 81-85.
[17] *See id*. at ¶¶ 86-88, 179-182, 185-188.
[18] *Carefusion 213, LLC v. Prof'l Disposables, Inc*., No. CIV.A. 09-2616-KHV, 2010 WL 4004874, at *3 (D. Kan. Oct. 12, 2010) (internal citations omitted); *see also Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1240-41 (10th Cir. 2014).
[19] *Id*.
[20] *Id.*

4

"Good cause" under Rule 16(b)(4) requires the moving party to "show that the amendment deadline could not have been met even if it had acted with due diligence."[21] Thus, the party requesting an untimely amendment "is normally expected to show good faith on its part and some reasonable basis for not meeting the deadline."[22]

Because Rule 16 requires diligence, if a party knows of "the underlying conduct but simply failed to raise [its] claims, . . . the claims are barred."[23] On the other hand, "Rule 16's good cause requirement may be satisfied . . . if a [party] learns new information through discovery or if the underlying law has changed."[24] It is in the Court's discretion to decide whether the movant has established good cause sufficient to modify the scheduling order deadlines.[25]

### b. Good Cause

Plaintiff argues good cause exits because she did not learn of Defendant's accessing her private Facebook communications via her work smartphone until after the October 18, 2019 motion to amend deadline had passed. In support of this statement, Plaintiff attaches to her Motion a signed Declaration from her attorney. The Declaration states "[o]n October 21, 2019, it became known to Plaintiff that Defendant accessed Plaintiff's personal Facebook account after she returned her company device and that Defendant obtained Plaintiff's personal Facebook information."[26]

---

[21] *Id.*
[22] *Livingston v. Sodexo & Affiliated Co.*, No. 11-4162-EFM-KGS, 2012 WL 2045292, at *1 (D. Kan. June 6, 2012) (internal citations omitted).
[23] *Gorsuch*, 771 F.3d at 1240 (internal citations omitted).
[24] *Id.*
[25] *Carefusion 213*, 2010 WL 4004874, at *3 (internal citations omitted).
[26] ECF No. 46-2.

5

Defendant, on the other hand, argues Plaintiff knew it accessed her Facebook messages ten days prior to the deadline. In support, Defendant attaches a portion of Plaintiff's deposition testimony, which was taken on October 8, 2019. During the deposition, Defendant presented Plaintiff with copies of her private Facebook messages and photographs.[27] At the deposition, Plaintiff testified she "assumed the Company accessed her messages through the Facebook messenger application on her Company-issued device."[28]

In reply, Plaintiff states her deposition testimony was only speculation as to how Defendant obtained the messages, and that she did not definitely learn about such access until October 21, 2019. Plaintiff argues she could not, in good faith, move to amend until she gained actual knowledge of Defendant's actions. In support, Plaintiff cites Rule 11, which provides that by presenting a written motion to the Court, the attorney is certifying to the Court that factual contentious have evidentiary support.[29]

As stated above, Rule 16's good cause requirement can be satisfied if a party shows, in good faith, it learned new information after the amendment deadline passed. Here, although shown and questioned about the Facebook messages during the October 8, 2019 deposition, Plaintiff and her attorney state Plaintiff did not gain actual knowledge regarding Defendant's *source* of the Facebook communications until October 21, 2019. A review of the docket shows the parties participated in a mediation on October 21, 2019.[30] Based on

---

[27] *See* Plaintiff's deposition transcript attached as Exhibit A at ECF No. 49-1.
[28] ECF No. 49, p. 2.
[29] *See* Fed. R. Civ. P. 11(b)(4).
[30] *See* ADR Report at ECF No. 40.

6

this, Plaintiff's statement, and her attorney's Declaration, the Court finds it plausible Plaintiff gained actual knowledge, as opposed to presumed knowledge, regarding how Defendant obtained the Facebook communications on October 21, 2019. Also, based on Rule 11, the Court finds Plaintiff's explanation she could not move to amend until she gained actual knowledge of Defendant's actions to be a good faith reason for the delay.

Additionally, the Court notes the parties dispute in this regard involves a time period spanning less than two weeks. Plaintiff states she did not have the requisite knowledge of Defendant's action until three days after the motion to amend deadline. Defendant argues she learned of the information ten days before the deadline. At this posture of the case, the Court finds it is of not much consequence whether Plaintiff knew of the information a few days before or a few days after the motion to amend deadline. Defendant was recently granted leave to amend the pleadings to add two third-party defendants to the case.[31] As a result, the Court has extended the discovery deadline to June 30, 2020.[32] This new discovery deadline leaves the parties time to complete any necessary discovery regarding Plaintiff's new claims.

Furthermore, the Court notes Defendant does not argue it would be prejudiced by any delay caused in adding these new claims. This is not a case where Plaintiff moved to amend the pleadings on the eve of the pretrial conference or right before the discovery deadline.[33] Thus, the Court finds Plaintiff has presented good cause for filing her Motion

---

[31] *See* Memorandum and Order at ECF No. 42.
[32] *See* Amended Scheduling Order at ECF No. 72.
[33] *See, e.g., Wilson v. Wal-Mart Stores, Inc*., No. 07-2263-JWL, 2008 WL 2622895, at *3 (D. Kan. June 30, 2008) (denying motion to amend because it was filed on the evening before the pre-trial

7

after the amendment deadline. The Court will now address the merits of allowing Plaintiff to amend under Rule 15.

### 2. Amendment Under Rule 15

#### a. Legal Standard

The standard for permitting a party to amend a complaint is well established. Under certain circumstances, a party may amend a pleading as a matter of course under Rule 15(a)(1). However, in cases such as this, where the time to amend as a matter of course has passed, and the opposing party does not consent, a party may amend its pleading only by leave of court under Rule 15(a)(2).

Rule 15(a)(2) provides leave shall be freely given when "justice so requires," and the decision to allow an amendment is within the sound discretion of the court.[34] The court considers a number of factors in deciding whether to allow an amendment, including timeliness, prejudice to the other party, bad faith, and futility of amendment.[35] In exercising its discretion, the court must be "mindful of the spirit of the federal rules of civil procedure to encourage decisions on the merits rather than on mere technicalities."[36] The Tenth Circuit Court of Appeals acknowledged that Rule 15 is intended "to provide litigants

---

conference and almost seven months after the deadline to amend pleadings); *Klaassen v. Atkinson*, No. 13-2561-DDC, 2016 WL 1715434, at *3 (D. Kan. Apr. 29, 2016) (denying motion to amend where plaintiff filed the motion four months after learning of the new information and one month before the close of discovery).

[34] *See J. Vangel Elec., Inc. v. Sugar Creek Packing Co.*, No. 11–2112–EFM, 2012 WL 5995283, at *2 (D. Kan. Nov. 30, 2012).

[35] *See Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

[36] *Hinkle v. Mid-Continent Cas. Co.*, No. 11–2652–JTM-KMH, 2012 WL 2581000, at *1 (D. Kan. July 3, 2012) (citing *Koch v. Koch Indus.*, 127 F.R.D. 206, 209 (D. Kan. 1989)).

'the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties,'"[37] especially in the absence of bad faith by an offending party or prejudice to a non-moving party.[38] With these standards and factors in mind, the Court evaluates Plaintiff's request to amend her Complaint.

### b. Futility

Besides the timeliness argument addressed above, Defendant argues Plaintiff's proposed claims under the SCA and intrusion upon seclusion are futile. As the party opposing amendment, Defendant bears the burden of establishing futility.[39] "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal."[40] The proposed pleading is then analyzed using the same standard as a motion to dismiss under Rule 12(b)(6). When utilizing this standard, "the court must accept as true all well-pleaded factual allegations and view them in the light most favorable to the pleading party."[41] Only if the court finds "the proposed claims do not contain enough facts to state a claim for relief that are plausible on their face or the claims otherwise fail as a matter of law"[42] should the court find the amendment futile.

---

[37] *Carefusion 213,* 2010 WL 4004874, at *4 (internal citations omitted).
[38] *See AK Steel Corp. v. PAC Operating Ltd. P'ship*, No. 15-9260-CM-GEB, 2016 WL 6163832, at *4 (D. Kan. Oct. 24, 2016) (collecting cases; internal citations omitted).
[39] *Neonatal Prod. Grp., Inc. v. Shields*, No. 13-2601-DDC, 2015 WL 1957782, at *2 (D. Kan. Apr. 29, 2015).
[40] *Farmers Bank & Trust, N.A. v. Witthuhn*, No. 11-2011-JAR, 2011 WL 5920941, at *2 (D. Kan. Nov. 28, 2011) (citing *Jefferson Cnty. Sch. Dist. No. R–1 v. Moody's Investors's Servs., Inc.,* 175 F.3d 848, 859 (10th Cir. 1999)).
[41] *Carefusion 213*, 2010 WL 4004874, at *5 (citing *Anderson v. Suiters,* 499 F.3d 1228, 1238 (10th Cir. 2007) (internal citations omitted)).
[42] *Id*. (citing *Raytheon Aircraft Co. v. U.S.,* 501 F. Supp. 2d 1323, 1327 (D. Kan. 2007)).

9

### i. Facility Under the Stored Communications Act

The Stored Communications Act ("SCA") permits a civil cause of action against anyone who "(1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or (2) intentionally exceeds an authorization to access that facility; and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system."[43] Plaintiff alleges Defendant violated the SCA by intentionally accessing her private Facebook communications via the Facebook application on her work smartphone.

Defendant argues Plaintiff's SCA claim is futile because such claims are only applicable to facilities through which an electronic communication service is provided. Defendant insists facilities are generally electronic communication service providers, such as telephone companies, internet providers, and e-mail service providers, and states it is not such a provider. Thus, per Defendant, it cannot be liable to Plaintiff under the SCA.

In support of this argument, Defendant cites *Central Bank & Trust v. Smith*.[44] In that case, Central Bank & Trust ("Bank") brought suit against several former employees. Among other claims, the Bank alleged the employees violated the SCA by accessing confidential business information the Bank had stored on its secured computer servers. The Court dismissed the SCA claim finding the Bank failed to allege facts supporting the claim "**it** is 'a facility through which an electronic communication service is provided.'"[45]

---

[43] *See* 18 U.S.C. §§ 2701, 2707.
[44] 215 F. Supp. 3d 1226 (D. Wyo. 2016).
[45] *Id.* at 1234.

To be a facility under the statute, the Court stated the Bank would need to be an electronic communication service provider, which generally are comprised of telephone companies, Internet or e-mail service providers, and bulletin board services.[46] Based on this, the Court held the Bank is not a facility under the statute because is not an internet service provider or analogous to one.[47] The Court further found there was no allegation that any such facility was involved in the case.[48]

However, this case is distinguishable from the facts at hand. In *Central Bank & Trust*, the Bank alleged it was the facility at issue. Here, Plaintiff does not allege the Defendant is the facility. Rather, Plaintiff alleges the facility at issue is the Facebook server, which Plaintiff claims Defendant intentionally accessed without authorization to obtain her private Facebook messages.[49] While neither this Court nor the Tenth Circuit has addressed the applicability of the SCA to access of private Facebook communications in civil actions, several other courts have found it plausible.[50] Additionally, if Defendant attempts to argue the accessor (the person or entity accessing the electronic communications) has to be a facility, this is against the plain language of the statute. The

---

[46] *Id.* at 1234-35.
[47] *Id.*
[48] *Id.*
[49] *See* ECF No. 46-1, ¶¶ 177-183.
[50] *See, e.g., Ehling v. Monmouth-Ocean Hosp. Serv. Corp.*, 961 F. Supp. 2d 659, 665-669 (D.N.J. 2013) (finding that non-public Facebook wall posts are covered by the SCA); *Mahoney v. DeNuzzio*, No. CIV. 13-11501-FDS, 2014 WL 347624, at *3-4 (D. Mass. Jan. 29, 2014) ("But it suffices for present purposes that the complaint plausibly alleges that defendant obtained access to Yahoo! and Facebook information in electronic storage in violation of the SCA.").

SCA applies to "whoever" accesses a facility without authorization, it says nothing about the facility having to be the alleged wrongdoer.[51]

Moreover, the Court finds Plaintiff has plausibly alleged Facebook fits the definition of "electronic communication service" as set forth in the SCA. As stated above, the SCA permits a civil cause of action against anyone who intentionally accesses without authorization (or in access of an authorization) a "facility through which an electronic communication service is provided."[52] While the SCA does not define "facility," the statute does define an "electronic communication service" as "any service which provides to users thereof the ability to send or receive wire or electronic communications."[53] In her Proposed Amended Complaint, Plaintiff alleges Facebook provides its users with the ability to send and receive electronic messages.[54] Thus, Plaintiff has adequately alleged that Facebook is a facility through which an electronic communication service is provided, triggering potential liability under the SCA.

### ii. Authorization Under the Stored Communications Act

Defendant also argues Plaintiff's SCA claim is futile because Plaintiff authorized its access of the Facebook application via her work smartphone. In her Proposed Amended

---

[51] 18 U.S.C. § 2701(a); *see also* 18 U.S.C. § 2707(a) (stating in a civil action, "any . . . person aggrieved by any violation of this chapter in which the conduct constituting the violation is engaged in with a knowing or intentional state of mind may . . . recover from the **person or entity** . . . which engaged in that violation . . . .") (emphasis added); *Bovino v. MacMillan*, 28 F. Supp. 3d 1170, 1176 (D. Colo. 2014) ("The SCA was enacted, in part, 'to protect privacy interests in personal and proprietary information and to address the growing problem of unauthorized persons deliberately gaining access to . . . [private] electronic or wire communications.'") (internal citations omitted).
[52] 18 U.S.C. § 2701(a); 18 U.S.C. § 2707.
[53] 18 U.S.C. § 2510(15) (incorporated by reference in 18 U.S.C. § 2711(1) of the SCA).
[54] ECF No. 46-1 at ¶ 178.

Complaint, Plaintiff alleges she never authorized Defendant to access her private, non-work-related Facebook messages.[55] Defendant, however, insists because Plaintiff's smartphone was a company-issued device—and because Plaintiff admits she was conducting company business on the Facebook application—Defendant had authorization to access the Facebook application per its Technology Use Policy ("Policy").

While Defendant is correct in stating the SCA only applies to unauthorized access,[56] the existence and scope of authorization is generally a highly factual inquiry.[57] "Authorized access, in the electronic context, typically involves consideration of 'the expected norms of intended use or the nature of the relationship established' between the holder of the communications and the authorized party.'"[58] And, as Plaintiff argues, a review of Defendant's Policy does not show unequivocal access as Defendant claims.

The Policy states it governs "all electronic communications which are 1) accessed on or using the Company Systems; or 2) related to an employee's employment with Sherwin-Williams."[59] While Plaintiff's work smartphone would be included in the "Company Systems," it is possible Plaintiff did not use her work smartphone to access or send the private messages and photographs at issue. In her Proposed Amended Complaint, Plaintiff alleges she used the Facebook application on her work smartphone for work

---

[55] ECF No. 46-1 at ¶¶ 83, 87, and 179.
[56] *See* 18 § U.S.C. 2701(a) and (c).
[57] *Bovino,* 28 F. Supp. 3d at 1176.
[58] *Id.* at 1176 (internal citations omitted).
[59] *See* Defendant's Technology Use Policy attached at ECF No. 49-2, p. 2.

purposes, but does not state she used her work smartphone when accessing Facebook for personal reasons.[60]

This is enforced by the portion of Plaintiff's deposition transcript attached to Defendant's Response. In the deposition, Defendant asked Plaintiff if she used the Facebook application on her company-issued device to send a private picture to an individual not associated with her work. Plaintiff responded, "I had access to this app through other devices, so I don't know factually that this [communication] came from my Sherwin-Williams issued device."[61] If Plaintiff did not use her work smartphone to send or access the private communications at issue, then it does not appear Defendant's Policy would authorize Defendant to access the same as the Policy covers only electronic communications made on company devices or work-related communications.

But, even if the messages are covered by the Policy, its not clear the Policy authorizes access of non-work-related messages. The Policy states:

> To the extent permitted by law, the Company reserves the right to monitor, access, review and disclose information about usage of Company Systems and Files at the Company's discretion, and at any time without prior notice. By using Company Systems, all users acknowledge the Company's right to such access and knowingly and voluntarily consent to such access. For example, unless prohibited by law, the Company may access the Company Systems used by an employee where a **legitimate business reason exists** . . . (2) following the employee's termination . . . .[62]

Here, Plaintiff alleges the messages accessed by Defendant were private, non-work-related communications. Thus, based on the record before the Court at this time, it does

---
[60] ECF No. 46-1 at ¶¶ 78-80.
[61] ECF No. 49-1 at p. 7.
[62] ECF No. 49-2 at p. 3 (emphasis added).

not appear Defendant had a "legitimate business reason" to access Plaintiff's private communications with an individual not related to Plaintiff's job. Defendant's right to access messages exchanged between Plaintiff and a co-worker, for example, might be considered a "legitimate business reason," but those are not the facts before the Court at this time. And, under the motion to dismiss standard utilized for futility arguments, the Court must "accept as true all well-pleaded factual allegations and view them in the light most favorable to the pleading party."[63]

It is possible discovery will unravel more evidence regarding the scope of the Policy and Plaintiff's understanding of the same, making Defendant's authorization argument more appropriate for a later dispositive motion. However, at this stage of the litigation, the Court cannot find Plaintiff's SCA claim futile.[64]

### iii. Consent under Intrusion Upon Seclusion

For similar reasons, Defendant argues Plaintiff's proposed common law claim of intrusion upon seclusion is futile. In her Proposed Amended Complaint, Plaintiff alleges Defendant intentionally intruded upon her private affairs and concerns when accessing her private Facebook messages, and that such intrusion was highly offensive to her and would be highly offensive to a reasonable person.[65] Defendant argues consent is an

---

[63] *Carefusion 213*, 2010 WL 4004874, at *5 (internal citations omitted).
[64] *See, e.g., Hollis v. Acoustic Sounds, Inc.*, No. 13-1083-JWL, 2013 WL 4768076, at *2 (D. Kan. Sept. 4, 2013) ("The issue of futility is more appropriately addressed at a later stage in the case by the presiding district court judge. Because plaintiff's amendments do not appear clearly frivolous, the court exercises its discretion and grants plaintiff leave to file the amended complaint attached to this motion.").
[65] ECF No. 46-1, ¶¶ 184-188. The Court notes Count IX in Plaintiff's Proposed Amended Complaint is titled "Violation of the Stored Communications Act," but the substance of the count relates to a common law claim of intrusion upon seclusion. *See, e.g., Mechler v. United States*,

absolute defense to such a claim, and that, as discussed above, Plaintiff consented to such access by virtue of the Technology Use Policy. However, for the same reasons discussed above, the Court cannot, at this pleading stage, find Plaintiff consented to Defendant accessing private, personal messages which were unrelated to her work for Defendant.

c. **Bad Faith and Prejudice**

While Defendant did challenge Plaintiff's proposed amendment on timeliness and futility grounds, other factors weighed by the Court, such as bad faith and prejudice to the non-moving party, were not addressed. Despite the parties' lack of attention, the Court briefly considers each topic.

Defendant does not suggest Plaintiff is guilty of any bad faith, and the Court sees none demonstrated in the parties' submissions. Therefore, this factor weighs in Plaintiff's favor.

Most importantly, Defendant fails to present any argument regarding the prejudice it might face if the amendment were permitted. As the party opposing the amendment, Defendant bears the burden to demonstrate undue prejudice within the meaning of Rule 15.[66] Under Rule 15, "undue prejudice" means "undue difficulty in prosecuting or defending a lawsuit as a result of a change of tactics or theories on the part of the movant."[67]

---

No. 12-1183-EFM-GLR, 2012 WL 5289627, at *3 (D. Kan. Oct. 23, 2012) ("[T]he courts look to the substance of the alleged claim, including any reasonable construction of the claim based on the facts alleged, not merely attached labels.").
[66] *Carefusion 213*, 2010 WL 4004874, at *4 (internal citations omitted).
[67] *Id*. (internal quotations and citations omitted).

While any amendment invariably causes some "practical prejudice," undue prejudice means that the amendment "would work an injustice to the defendant."[68]

Given Defendant's disregard of this "most important factor,"[69] the Court finds Defendant has failed to demonstrate prejudice sufficient to prohibit the proposed amendment. And, considering that discovery is on-going, the Court struggles to discern any true injustice which might occur from amendment. The parties have adequate time and opportunity to litigate the new claims.

### C. Conclusion

For the reasons stated above, the Court concludes Plaintiff has demonstrated good cause for filing the present Motion after the amendment deadline and finds that justice requires her proposed amendment be allowed to proceed.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Leave to Amend Pleadings (**ECF No. 46**) is **GRANTED** as set forth above. Plaintiff shall file her First Amended Complaint for Damages within seven days of this Order.

**IT IS SO ORDERED**.

Dated at Wichita, Kansas this 9th day of April, 2020.

s/ Gwynne E. Birzer  
GWYNNE E. BIRZER  
United States Magistrate Judge

---

[68] *Id*. (internal quotations and citations omitted).
[69] *Minter*, 451 F.3d at 1207 (stating the most important factor in deciding a motion to amend the pleadings is whether the amendment would prejudice the nonmoving party).