## UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | | |
|---|---|---|
| AMY DECOURSEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:19-cv-02198-DDC-GEB |
| | ) | |
| THE SHERWIN-WILLIAMS COMPANY, | ) | |
| | ) | REQUEST FOR JURY TRIAL |
| Defendant. | ) | |

### FIRST AMENDED COMPLAINT FOR DAMAGES

COMES NOW, Amy DeCoursey (hereinafter "Plaintiff"), by and through her undersigned attorney and for her cause of action against Defendant The Sherwin-Williams Company (hereinafter "Defendant"), alleges and states as follows:

### Parties

1.     Plaintiff Amy DeCoursey is an individual residing in Overland Park, Johnson County, Kansas.

2.     Defendant is, and at all times pertinent to this Petition was, a for-profit corporation incorporated under the laws of the state of Ohio which is registered to do business in the State of Missouri.

### Jurisdiction and Venue

3.     This is a discrimination and retaliation lawsuit based upon and arising under the Missouri Human Rights Act, Mo. Rev. Stat. § 213.010 *et seq.* ("MHRA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, ("Title VII"), and the Americans with Disabilities Act, 42 U.S.C. § 12111,  *et seq.*, as amended ("ADA"), as well as a lawsuit for invasion of privacy under the Stored Communications Act, 18 U.S.C. § 2701 *et seq.* ("SCA") and state common law.

1

4.      This Court has jurisdiction and venue over all factual and legal matters relevant to this cause of action.

5.      Defendants engaged in discriminatory acts prohibited by the MHRA in Jackson County, Missouri.

6.      Plaintiff was first injured by Defendant's unlawful discriminatory conduct in Jackson County, Missouri.

7.      Plaintiff was an employee of Defendant within the meaning of MHRA, ADA, and Title VII.

8.      Defendant is an "employer" within the meaning of the MHRA, ADA, and Title VII.

9.      At all relevant times, Defendant has operated its business in a continuing and ongoing fashion and employed employees in Missouri, including operating multiple Sherwin-Williams Paint stores in multiple counties throughout the state, including one in Kanas City, Jackson County, Missouri.

10.     Jurisdiction and venue are proper in Jackson County, Missouri, pursuant to Mo. Rev. Stat. §§ 508.010 and 213.111.1.

11.     Plaintiff initially brought this action in Jackson County, Missouri.

12.     The action was removed to the United States District Court for the Western District of Missouri by Defendant.

13.     Defendant then filed a Motion to Dismiss or, in the Alternative, to Transfer Due to Improper Venue. (Doc. 6).

14.     Plaintiff stipulated to the Transfer of Venue. (Doc. 8).

15.     The matter was ordered transferred to this Court. (Doc. 9).

16.     Jurisdiction and venue over the matters transferred from the Western District of Missouri are proper in this Court pursuant to 28 U.S.C. § 1331; 28 U.S.C. §1404(a).

17.     A substantial portion of the events giving rise to the claims pled herein occurred in the state of Kansas.

18.     The amount in controversy exceeds $75,000.00.

19.     Jurisdiction and venue of the matters newly pled in this First Amended Complaint are proper in this Court pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1332, 28 U.S.C. § 1367, and 28 U.S.C. § 1391.

<u>**Administrative Procedures**</u>

20.      On or about March 16, 2018, Plaintiff timely filed a Charge of Discrimination with the Missouri Commission on Human Rights ("MCHR") which was dually filed with the Equal Employment Opportunity Commission ("EEOC"), against Defendant, alleging sexual harassment, discrimination due to sex, disability, and retaliation. The Charge of Discrimination is attached hereto as Exhibit A and incorporated by reference as if fully set forth herein.

21.     On or about December 4, 2018, the MCHR issued to Plaintiff Notices of Right to Sue and this lawsuit was filed within 90 days of the issuance of the MCHR's Notices of Right to Sue. The Notice of Right to Sue is attached hereto as Exhibit B and incorporated by reference as if fully set forth herein.

22.     On or about November 28, 2018 the EEOC issued to Plaintiff a Notice of Right to Sue and this lawsuit has been filed within 90 days of the issuance of the EEOC's Notice of Right to Sue. The Notice of Right to Sue is attached hereto as Exhibit C and incorporated by reference as if fully set forth herein.

23.     The aforesaid Charge of Discrimination provided the MCHR and the EEOC sufficient opportunity to investigate the full scope of the controversy between the parties and, accordingly, the sweep of this judicial complaint may be and is as broad as the scope of a MCHR or EEOC investigation, which could reasonably be expected to have grown out of the Charge of Discrimination.

24.      Plaintiff has satisfied all private, administrative, and judicial prerequisites to the institution of this action and it has been filed within the requisite statute of limitations.

**Background**

25.     Plaintiff's sex is female.

26.     Plaintiff is a person with a disability, as defined by the MHRA and ADA.

27.     At all relevant times, Defendant has employed six (6) or more persons within the state of Missouri.

28.     At all relevant times, Defendant has been engaged in an industry affecting commerce, and has continuously had more than fifteen (15) employees.

29.     Plaintiff was hired by Defendant on or about May 21, 2007, as part of Defendant's management trainee program.

30.     After this program was completed, Plaintiff worked as an assistant manager at Defendant's paint store in Mission, Kansas from around August 2007 to June 2008.

31.     During Plaintiff's management training in 2007, at the store in Mission, Kansas, a customer flashed explicit photos to the staff members working at the time, including Plaintiff and Plaintiff's immediate supervisor.

32.     The staff and supervisor laughed about the incident and there was no conversation with the customer about not doing this again and no consequences for this behavior.

33.     In or about June of 2008, Plaintiff began working for Defendant as a manager in its store located in Miami, Oklahoma.

34.     While at the store in Oklahoma a painter grabbed Plaintiff's breasts and said, "you'll do just fine here."

35.     Later in 2008, Plaintiff was at training in Dallas, Texas. While at the training, several other male trainees repeatedly made crude jokes and laughed in front of the training manager, who laughed as well.

36.     Plaintiff complained to the training manager that the jokes were unwelcome and offensive, however the manager did nothing about the comments and continued to laugh with the other trainees.

37.     Throughout Plaintiff's ten years of employment with Defendant, numerous employees were groped and treated inappropriately, including at national meetings.

38.     Throughout Plaintiff's ten years of employment with Defendant, Defendant had a culture of sexual bawdiness which always made Plaintiff uncomfortable, but which, after her complaints regarding inappropriate conduct were ignored, she felt unable to change.

39.     These incidents caused Plaintiff to believe that this behavior was normal and acceptable within the company.

40.     On or about January 2017, feeling pressure to fit in with the culture of sexual bawdiness, Plaintiff exchanged suggestive messages with another employee, Aaron Gaona Vargas ("Vargas").

41.     Plaintiff never consented to having sexual contact with Vargas.

42.     On or about August 2017, Plaintiff requested the help of the employee, Vargas, to assist at a volunteer project as an agent for Defendant.

43.     After the work was completed, Plaintiff gave Vargas a tour of the building, just as Plaintiff had previously been given such a tour.

44.     As part of the tour, Plaintiff showed Vargas the basement, as she had been shown when she had been given the tour.

45.     Once Plaintiff and Vargas were in the basement, he grabbed and kissed her.

46.     Plaintiff was shocked by the behavior but felt vulnerable and scared about what would happen if she rejected his advances.

47.     The situation escalated quickly, and Vargas proceeded to, without asking Plaintiff, force his hand down Plaintiff's pants. Vargas proceeded to penetrate Plaintiff's vagina with his fingers in an extremely aggressive manner. This frightened Plaintiff and she froze.

48.     Vargas proceeded to unbutton his pants and remove his penis. Plaintiff became even more frightened and tried to leave. However, he held Plaintiff's wrist and would not let her go.

49.     In an explicit refusal, Plaintiff said "no, not here," and attempted to pull away. Yet, Vargas proceeded to kiss Plaintiff and penetrate her vagina with his fingers.

50.     Plaintiff attempted to pull away and run up the stairs, but Vargas again tightened his grip. Plaintiff begged and pleaded to be let go.

51.     Vargas attempted to pull Plaintiff's head down towards his penis to make her perform oral sex. Plaintiff again tried to pull away and leave but was unsuccessful.

52.     Vargas continually tried to pull Plaintiff into a corner of the basement that could not be seen from the stairs and Plaintiff was frightened that he was going to try to have sexual intercourse with her.

53.     In this moment, Plaintiff felt her only option to promise Vargas that this would continue later. Vargas asked Plaintiff when, and she responded in his truck. It was only after this that Vargas let go of Plaintiff's wrist.

54.     Plaintiff immediately ran to the stairs to escape the situation.

55.     After this incident, Plaintiff avoided Vargas as best as she could while still doing her job and never sent him explicit or suggestive messages again.

56.     After this incident, Plaintiff began experiencing anxiety and Plaintiff's supervisors noticed the change.

57.     One or about November 9, 2017, Plaintiff's District Manager, Steve Farrar, had a meeting with Plaintiff and noted that he had noticed a change in her attitude.

58.     Plaintiff apologized and explained that she had been going through a lot of issues and that they were causing her a lot of anxiety.

59.     Plaintiff did not feel comfortable discussing the situation with her District Manager since they were a direct result of instances that occurred on the job. Additionally, the culture of sexual harassment also made Plaintiff feel uncomfortable talking to her District Manager, who was male, about the incident.

60.     On or about November 14, 2017, Plaintiff was at Cloverset Apartments for work and Mr. Vargas was also working at this location.

61.     Once Plaintiff attempted to leave, Vargas came to her car, prevented her from leaving and asked when the events from August were going to continue. Plaintiff was extremely frightened and afraid of another attack, so she stated that she was not sure and to message her. Plaintiff made these statements so that Vargas would let her leave.

62.     On or about November 16, 2017, Vargas and Plaintiff were on a jobsite together and she was doing a pre-walk with him to explain what needed to be done prior to a scheduled install.

63.     During the pre-walk Vargas followed Plaintiff, even after she instructed him not to, and he pushed her up against a wall and held her there and tried to kiss her. Plaintiff turned her head and repeatedly asked him to stop.

64.     After persistent begging, Vargas finally stopped and joked that "he was bad." Plaintiff finished measuring the main portion of the apartment. Plaintiff did not measure the laundry room, closet, or bathroom because she was traumatized from being assaulted for a second time.

65.     On or about November 27, 2017, Plaintiff told her District Sales Manager, Ryan Sandefer, that she had been struggling because she had been sexually assaulted. Plaintiff also informed Mr. Sandefer that she was in therapy to deal with her trauma and anxiety surrounding these issues and requested that he inform Plaintiff's District Manager of the situation.

66.     On or about November 30, 2017, Plaintiff had a phone interview about the sexual assault with the Area Human Resource Manager, Crystal Garrett and Derek Davis, from loss prevention.

67.     Plaintiff did not want to participate in the investigation because she was terrified that Vargas would retaliate against her or that she would get in trouble because they had exchanged explicit messages.

68.     Plaintiff was expressly promised that if she cooperated with the investigation, she would not be terminated.

69.     Plaintiff also received reassurances that the company had a non-retaliation policy, and if she participated in the investigation in good faith, then she would not be retaliated against.

70.     Based upon these reassurances, Plaintiff agreed to participate in the investigation.

71.     Plaintiff provided Defendant with a statement and provided Defendant the messages with the installer.

72.     On or about December 12, 2017, shortly after providing Defendant the messages with the installer, Plaintiff was informed that she was being terminated for sending the messages to the installer.

73.     Plaintiff was told she had violated Defendant's policy, and that was the reason she was being fired.

74.     Other employees working for Defendant dated and exchanged sexually explicit messages, but they were not terminated.

75.     Defendant, through its managers, was aware of the foregoing, and did not take disciplinary action to stop it.

76.     Upon information and belief, the Defendant's reason for terminating Plaintiff was a pretext.

77.     Upon information and belief, the actual reason Plaintiff was terminated was because of her disability, because of her sex, and/or in retaliation for opposing the discrimination to which she had been subjected.

78.     During Plaintiff's employment with Defendant, she used a smartphone provided to her by Defendant.

79.      Part of Plaintiff's job duties involved using Facebook.

80.     Plaintiff downloaded the Facebook application on her work smartphone and logged in to her personal account so she could use said account to do work related activity on Facebook.

81.     Upon her termination, Plaintiff returned her work smartphone to Defendant.

82.     Defendant used Plaintiff's work smartphone to obtain access her private Facebook account, including private electronic communications she had made using the account.

83.     In doing so, Defendant accessed without authorization the Facebook server on which the messages were stored.

84.     The private electronic communication Defendant accessed were not related to Plaintiff's work for Defendants and were not sent to or from any person connected to Plaintiff's work for Defendants.

85.     Some of the private, electronic communications accessed by Defendant contained private photographs of Plaintiff.

86.     Defendant had no reasonable basis for accessing the private Facebook messages, or any authority to do so.

87.     Plaintiff had never authorized Defendant to access the private Facebook messages.

88.     The viewing of Plaintiff's private communications would be highly offensive to a reasonable person.

89.     Plaintiff only learned of Defendant's unauthorized access of her private Facebook messages on October 21, 2019 when she learned of it from Defendant.

### COUNT I
### RSMo. § 213.010 *et seq.* Discrimination Based on Sex

90.     Plaintiff re-alleges and incorporates by reference the allegations contained in the above-paragraphs as if fully set forth herein.

91.     During Plaintiff's employment with Defendant, Plaintiff was subjected to different terms and conditions of employment based on her sex, female, by Defendant, including by her supervisors and co-workers.

92.     Plaintiff was subjected to different work requirements than other similarly situated male employees.

93.     Upon information and belief, Plaintiff's sex was a motivating factor in the termination of her employment with Defendant.

94.     All actions or inactions of or by Defendant occurred by or through its owners, agents, servants, or employees acting within the course and scope of their employment, as set forth herein.

95.     Defendant's actions constitute unlawful employment discrimination against Plaintiff in violation of the MHRA, RSMo. § 213.010 et seq., as alleged herein.

96.     As a direct and proximate result of the unlawful conduct of Defendant as set forth herein, Plaintiff has suffered damages which include garden variety emotional distress, past and future wages and benefits, career damage and diminished career potential, mental distress in the form of embarrassment, degradation, humiliation, anxiety, loss of enjoyment of life, loss of sleep, and other non-pecuniary losses.

97.     The conduct of Defendant was outrageous and evidenced an evil motive or reckless indifference for the rights of Plaintiff and the rights of others, entitling Plaintiff to an award of punitive damages.

98.     Plaintiff is also entitled to recover all her costs, expenses, expert witness fees, and attorneys' fees incurred in this matter.

WHEREFORE, Plaintiff prays for judgment against Defendant, jointly and severally, for actual, compensatory, and punitive damages, all costs, expenses, and attorneys' fees incurred herein, for reinstatement and appropriate equitable relief, for interest at the highest lawful rate, and for such other relief as the Court deems just and proper.

## COUNT II
### RSMo. § 213.010 *et seq.* Sexual Harassment

99.     Plaintiff re-alleges and incorporates by reference the allegations contained in the above-paragraphs as if fully set forth herein.

100.     During Plaintiff's employment with Defendant, Plaintiff was subjected to different terms and conditions of employment and an ongoing practice and/or a pattern of severe and pervasive harassment based on her sex, female.

101.     The harassment Plaintiff faced was so severe that it materially changed the conditions of her employment.

102.     The harassment to which Plaintiff was subjected was offensive to Plaintiff and would have been offensive to the average person.

103.     Defendant knew or should have known about the harassment to which Plaintiff was subjected.

104.     The workplace of Defendant had such a pervasive culture of sexually explicit activity that she did not feel that reporting the harassment would do any good.

105.     Early in Plaintiff's career, Plaintiff had reported harassment to a supervisor and no action had been taken.

106.     Plaintiff had no reason to believe that any further reports would have had any effect.

107.    All actions or inactions of or by Defendant occurred by or through its owners, agents, servants, or employees acting within the course and scope of their employment, as set forth herein.

108.    Defendant's actions constitute unlawful employment discrimination against Plaintiff in violation of the MHRA, RSMo. § 213.010 et seq., as alleged herein.

109.    As a direct and proximate result of the unlawful conduct of Defendant as set forth herein, Plaintiff has suffered damages which include garden variety emotional distress, past and future wages and benefits, career damage and diminished career potential, mental distress in the form of embarrassment, degradation, humiliation, anxiety, loss of enjoyment of life, loss of sleep, and other non-pecuniary losses.

110.    The conduct of Defendant was outrageous and evidenced an evil motive or reckless indifference for the rights of Plaintiff and the rights of others, entitling Plaintiff to an award of punitive damages.

111.    Plaintiff is also entitled to recover all her costs, expenses, expert witness fees, and attorneys' fees incurred in this matter.

WHEREFORE, Plaintiff prays for judgment against Defendant, jointly and severally, for actual, compensatory, and punitive damages, all costs, expenses, and attorneys' fees incurred herein, for reinstatement and appropriate equitable relief, for interest at the highest lawful rate, and for such other relief as the Court deems just and proper.

## COUNT III
## RSMo. § 213.010 *et seq.* Disability Discrimination

112.    Plaintiff hereby re-alleges and incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein.

113.    Plaintiff suffers from severe anxiety.

114.    Plaintiff's medical condition limits her major life activities including self-care, concentrating, working, sleeping, and Plaintiff's body system functions.

115.    Plaintiff's medical condition is a disability as defined by the MHRA.

116.    Alternatively, Defendant regarded Plaintiff as disabled.

117.    Plaintiff informed Defendant of her medical condition on or about November 2017, as such, Defendant was aware of Plaintiff's medical condition at all relevant times, including prior to Plaintiff's termination.

118.    With or without reasonable accommodation, Plaintiff could perform the essential functions of her job.

119.    Plaintiff's disabilities, or being regarded as having such impairments by Defendant, were a motivating factor in her termination, and overall negative treatment while employed by Defendant.

120.    Defendant's actions and omissions, as aforesaid, constitute unlawful employment practices in violation of the MHRA, RSMo. § 213.010 *et seq.*

121.    At all pertinent times mentioned herein, the above described perpetrators were agents, servants, and employees of Defendant and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized by Defendant; thus, making Defendant liable for such actions.

122.    Defendant failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees, including disability discrimination.

123.    As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

124.     As a further direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered a loss of self-esteem, humiliation, emotional distress and mental anguish and pain, and related compensatory damages.

125.     By failing to take prompt and effective remedial action, Defendant in effect condoned, ratified and/or authorized the discrimination against Plaintiff.

126.     As shown by the foregoing, Defendant's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of the Plaintiff, thus, justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter them and other companies from the conduct in the future.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against the Defendant for economic damages, including, but not limited to: back pay, lost benefits, and front pay, injunctive relief, compensatory damages, punitive damages, for reasonable attorneys' fees and costs incurred herein, for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as this Court deems just and proper.

## COUNT IV
## RSMo. § 213.010 *et seq.* Retaliation

127.     Plaintiff re-alleges and incorporates by reference the allegations contained in the above-paragraphs as if fully set forth herein.

128.     Plaintiff engaged in protected activity under the MHRA in opposing discriminatory conduct by reporting harassment and discrimination to her supervisors and Human Resources employees of Defendant, and in participating in Defendant's investigation of the discrimination and harassment of Defendant.

129.     Defendant took adverse actions against Plaintiff as a result of her engaging in the aforementioned protected activity.

130.    Plaintiff was subjected to termination in response to Plaintiff engaging in the aforementioned protected actions.

131.    All actions or inactions of or by Defendant occurred by or through its owners, agents, servants, or employees acting within the course and scope of their employment, as set forth herein.

132.    Defendant's actions constitute unlawful employment discrimination against Plaintiff in violation of the MHRA, RSMo. § 213.010 *et seq.*, as alleged herein.

133.    As a direct and proximate result of the unlawful conduct of Defendant as set forth herein, Plaintiff has suffered damages which include garden variety emotional distress, past and future wages and benefits, career damage and diminished career potential, mental distress in the form of embarrassment, degradation, humiliation, anxiety, loss of enjoyment of life, loss of sleep, and other non-pecuniary losses.

134.    The conduct of Defendant was outrageous and evidenced an evil motive or reckless indifference for the rights of Plaintiff and the rights of others, entitling Plaintiff to an award of punitive damages.

135.    Plaintiff is also entitled to recover all of her costs, expenses, expert witness fees, and attorneys' fees incurred in this matter.

WHEREFORE, Plaintiff prays for judgment against Defendant, jointly and severally, for actual, compensatory, and punitive damages, all costs, expenses, and attorneys' fees incurred herein, for reinstatement and appropriate equitable relief, for interest at the highest lawful rate, and for such other relief as the Court deems just and proper.

## COUNT V
## DISPARATE TREATMENT BASED ON SEX IN VIOLATION OF TITLE VII

136.    Plaintiff re-alleges and incorporates the allegations contained in above-paragraphs as if fully set forth herein.

137.    Plaintiff was subjected to different work requirements than other similarly situated male employees.

138.    Upon information and belief, Plaintiff's sex was a motivating factor in the termination of her employment with Defendant.

139.    All actions or inactions of or by Defendant occurred by or through their owners, agents, servants, or employees acting within the course and scope of their employment, as set forth herein.

140.    Defendant's actions constitute unlawful employment discrimination against Plaintiff in violation of Title VII, 42 U.S.C.A. § 2000e *et seq.*, as alleged herein.

141.    As a direct and proximate result of the unlawful conduct of Defendant as set forth herein, Plaintiff has suffered damages which include emotional distress, pain and suffering, past and future wages and benefits, career damage and diminished career potential, mental distress in the form of embarrassment, degradation, humiliation, anxiety, loss of enjoyment of life, loss of sleep and other non-pecuniary losses.

142.    The conduct of Defendant was outrageous and evidence an evil motive or reckless indifference for the rights of Plaintiff and the rights of others, entitling Plaintiff to an award of punitive damages.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against the Defendant for economic damages, including, but not limited to: back pay, lost benefits, and front pay, injunctive relief, compensatory damages, punitive damages, for reasonable attorneys'

fees and costs incurred herein, for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as this Court deems just and proper.

## COUNT VI
## SEXUAL HARASSMENT IN VIOLATION OF TITLE VII

143.    Plaintiff re-alleges and incorporates the allegations contained in above-paragraphs as if fully set forth herein.

144.    During Plaintiff's employment with Defendant, Plaintiff was subjected to different terms and conditions of employment and an ongoing practice and/or a pattern of severe and pervasive harassment based on her sex, female.

145.    The harassment Plaintiff faced was so severe that it materially changed the conditions of her employment.

146.    The harassment to which Plaintiff was subjected was offensive to Plaintiff and would have been offensive to the average person.

147.    Defendant knew or should have known about the harassment to which Plaintiff was subjected.

148.    The workplace of Defendant had such a pervasive culture of sexually explicit activity that she did not feel that reporting the harassment would do any good.

149.    Early in Plaintiff's career, Plaintiff had reported harassment to a supervisor and no action had been taken.

150.    Plaintiff had no reason to believe that any further reports would have had any effect.

151.    All actions or inactions of or by Defendant occurred by or through their owners, agents, servants, or employees acting within the course and scope of their employment, as set forth herein.

152.     Defendant's actions constitute unlawful employment discrimination against Plaintiff in violation of Title VII, 42 U.S.C.A. § 2000e *et seq.*, as alleged herein.

153.     As a direct and proximate result of the unlawful conduct of Defendant as set forth herein, Plaintiff has suffered damages which include emotional distress, pain and suffering, past and future wages and benefits, career damage and diminished career potential, mental distress in the form of embarrassment, degradation, humiliation, anxiety, loss of enjoyment of life, loss of sleep and other non-pecuniary losses.

154.     The conduct of Defendant was outrageous and evidence an evil motive or reckless indifference for the rights of Plaintiff and the rights of others, entitling Plaintiff to an award of punitive damages.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against the Defendant for economic damages, including, but not limited to: back pay, lost benefits, and front pay, injunctive relief, compensatory damages, punitive damages, for reasonable attorneys' fees and costs incurred herein, for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as this Court deems just and proper.

## COUNT VII
## RETALIATION IN VIOLATION OF TITLE VII

155.     Plaintiff hereby re-alleges and incorporates by reference the allegations contained in the above-stated paragraphs.

156.     Plaintiff is a member of a protected class because of her sex.

157.     Plaintiff engaged in protected activity under Title VII in opposing discriminatory conduct by filing complaints of harassment and participating in Defendant's investigation of those complaints.

158.    Defendant took adverse actions against Plaintiff as a result of Plaintiff engaging in the aforementioned protected activity.

159.    Defendant retaliated against Plaintiff when they asked for her cooperation and she complied by answering questions and by providing messages, then Defendant terminated her because of those messages.

160.    Defendant further retaliated against Plaintiff by failing to assign her to another position.

161.    Defendant's actions constitute unlawful employment discrimination against Plaintiff and is violation of Title VII 42 U.S.C.A. § 2000e *et seq*., as alleged herein.

162.    As a direct and proximate result of the Defendant's actions and/or omissions, Plaintiff has been deprived of income, including wages and benefit as well as other monetary and non-monetary benefits.

163.    As a further direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered a loss of self-esteem, humiliation, emotional distress and mental anguish and pain, and related compensatory damages.

164.    By failing to take prompt and effective remedial action, Defendant, in effect condoned, ratified and/or authorized the discrimination against Plaintiff.

165.    As shown by the foregoing, Defendant's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of the Plaintiff, thus, justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter them and other companies from the conduct in the future.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against the Defendant for economic damages, including, but not limited to: back pay, lost benefits, and

front pay, injunctive relief, compensatory damages, punitive damages, for reasonable attorneys' fees and costs incurred herein, for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as this Court deems just and proper.

## COUNT VIII
## DISPARATE TREATMENT, HOSTILE WORK ENVIRONMENT, AND DENIAL OF REASONABLE ACCOMMODATION IN VIOLATION OF THE ADA

166.     Plaintiff hereby re-alleges and incorporates by reference the allegations contained in the above-stated paragraphs.

167.     At all times pertinent to this Complaint, Plaintiff was disabled, as defined by the ADA.

168.     At all relevant times, including prior to Plaintiff's termination, Defendant was aware that Plaintiff had a record of having such impairment.

169.     Plaintiff is a qualified individual as defined by the ADA, due to her disability and/or Defendant's perception that Plaintiff is disabled.

170.     Plaintiff was able to perform the essential functions of her job duties with Defendant with or without reasonable accommodation.

171.     Defendant unlawfully and intentionally discriminated against Plaintiff based on her disability and/or because they regarded her as disabled, and acted in bad faith by interfering with, recklessly disregarding, and denying her legal rights when they terminated Plaintiff's employment.

172.     Plaintiff's disability and/or Defendant's perception that Plaintiff is disabled, was the motivating factor in Defendant's decision to terminate Plaintiff's employment.

173.     As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

174.    As a further direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered a loss of self-esteem, humiliation, emotional distress and mental anguish and pain, and related compensatory damages.

175.    By failing to take prompt and effective remedial action, Defendant in effect condoned, ratified and/or authorized the discrimination against Plaintiff.

176.    As shown by the foregoing, Defendant's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of the Plaintiff, thus, justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter them and other companies from the conduct in the future.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against the Defendant for damages, including, but not limited to: back pay, lost benefits, and front pay, injunctive relief, compensatory damages, punitive damages, for reasonable attorneys' fees and costs incurred herein, for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as this Court deems just and proper.

## COUNT IX
## VIOLATION OF THE STORED COMMUNICATIONS ACT ("SCA")

177.    Plaintiff hereby re-alleges and incorporates by reference the allegations contained in the above-stated paragraphs.

178.    Facebook provides its users (including Plaintiff) with the ability to send and receive messages, which can include text and images (among other things).

179.    Defendant accessed either without authorization or in excess of its authorization, the servers of Facebook, and thereby obtain Plaintiff's private messages.

180.    The servers of Facebook are a facility through which Facebook's messaging system is provided.

181.    Defendant's actions constitute a violation of the SCA.

182.    Defendant's violation was engaged in with a knowing or intentional state of mind.

183.    As shown by the foregoing, Defendant's conduct was willful and intentional, thus, justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter them and other companies from the conduct in the future.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against the Defendant for damages, including, but not limited to: actual damages of no less than the statutory minimum of one thousand dollars ($1,000.00), punitive damages, for reasonable attorneys' fees and costs incurred herein, for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as this Court deems just and proper.

## COUNT IX
## VIOLATION OF THE STORED COMMUNICATIONS ACT ("SCA")

184.    Plaintiff hereby re-alleges and incorporates by reference the allegations contained in the above-stated paragraphs.

185.    Defendant accessed, without authorization, the private Facebook messages of Plaintiff, which included private communications and private photographs of Plaintiff.

186.    By accessing those private messages, Defendant intruded upon Plaintiff's private affairs and concerns.

187.    The intrusion into Plaintiff's private Facebook messages was highly offensive to Plaintiff.

188.    The intrusion into Plaintiff's private Facebook messages would be highly offensive to a reasonable person.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against the Defendant for damages, including, but not limited to: compensatory damages, for pre- and

post-judgment interest as allowed by law, and for such other and further legal and equitable relief as this Court deems just and proper.

### **Demand for Jury Trial and Designation of Place of Trial**

Plaintiff requests a trial by jury on all matters arising from this Petition, except for her requests for attorneys' fees, which she requests be heard separately by the Court subsequent to the entry of a jury verdict, and designates Kansas City, Kansas as the place of trial.

Respectfully submitted,

/s/ *Alexander Edelman*
Alexander Edelman,    KS #25821
Sarah C. Liesen         KS #26988
EDELMAN, LIESEN & MYERS, L.L.P.
208 W. Linwood Blvd.
Kansas City, Missouri 64111
Tel: (816) 301-4056
Fax: (816) 463-8449
sliesen@elmlawkc.com
**ATTORNEY FOR PLAINTIFF**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on this 13th day of April 2020, a true and correct copy of the foregoing was electronically filed using the Court's CM/ECF system and thereby served electronically upon:

Camille L. Roe
Kyle B. Russell
Jackson Lewis, PC
7101 College Blvd., Suite 1200
Overland Park, KS 66210
913-981-1018
Fax: 913-981-1019
camille.roe@jacksonlewis.com
Kyle.Russell@jacksonlewis.com

**ATTORNEYS FOR DEFENDANTS**

By:  */s/ Alexander Edelman*
Attorney for Plaintiff